# Benjamin H. Cooper, III, et al.

## v.

# William A. Kolberg, et al.

Record No. 930294

April 15, 1994

Present: Carrico, C.J., Compton, Stephenson, Whiting, Hassell, and Keenan, JJ.,
and Cochran, Retired Justice

*Michael H. Doherty (Charles McDonnell Radigan; Radigan, Rosenberg & Holmes,* on briefs), for appellants.

*Thomas L. Bricken,* for appellees William A. & Martha M. Kolberg.

*Ronald L. Lord (Hazel & Thomas,* on brief), for appellees John and Stacey Zugschwert.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

This appeal involves an easement over certain "shore land" bordering Lake Anna in Spotsylvania County. On March 15, 1991, Benjamin H. Cooper, III, and members of his family (collectively, the Coopers), owners of a one-acre tract of land abutting the easement, filed a bill of complaint against William A. Kolberg and Martha M. Kolberg (the Kolbergs), owners of an adjoining tract containing 1.064 acres. In the bill of complaint, the Coopers prayed for a mandatory injunction requiring the Kolbergs to remove a "wire cable fence" they

had erected across a portion of the shore land abutting the Coopers' property. The Coopers also prayed for a permanent injunction against the Kolbergs' future obstruction of the Coopers' access to the waters of Lake Anna.

The Kolbergs answered the Coopers' bill of complaint and filed a cross-bill against John F. Zugschwert and Stacie L. Zugschwert (the Zugschwerts), from whom the Kolbergs purchased their property. In the cross-bill, the Kolbergs called upon the Zugschwerts to defend the Kolbergs' title or to respond in damages.

The case was submitted to the trial court upon depositions, briefs, and oral argument. In its final decree, the trial court held that the Coopers had failed to establish an encroachment by the Kolbergs. Accordingly, the court dismissed the Coopers' bill of complaint with prejudice and dismissed the Kolbergs' cross-bill as moot. We awarded the Coopers an appeal and agreed to consider the Kolbergs' assignments of cross-error.

By deed dated November 9, 1968, in connection with the development of its Lake Anna reservoir, Virginia Electric and Power Company (VEPCO) acquired from Edna Broaddus Johnson and her children (collectively, the Johnsons) a tract of land containing 142.36 acres on the north side of the North Anna River, part of an original tract of 216 acres owned by the Johnsons.

When VEPCO filled the reservoir, most of the land it had acquired was flooded, but the water never reached the property line dividing VEPCO's purchase from the remainder of the Johnson land. As a result, there was formed a strip of land of varying width between the water line of Lake Anna and the new line of the Johnsons' property.

In anticipation of this eventuality, the Johnsons' deed to VEPCO designated the strip as " 'shore land' " and reserved an easement over it in the Johnsons' favor, subject to "requirements by regulatory authority" and "the rights granted [VEPCO]." In pertinent part, the deed provided as follows:

> There is reserved to Owner the exclusive right . . . to enter upon, occupy and use for recreational or agricultural purposes any part of the land hereby conveyed to [VEPCO] which may lie above the fluctuating water line of the said reservoir, hereinafter called "shore land". . . . Owner may construct, maintain and use on such shore land and beyond the same into the waters of said reservoir upon the land hereby conveyed to [VEPCO], such piers, jetties or other recreational or protective structures as are not detrimental to the development, operation and maintenance

of [VEPCO's] electric generating facilities . . . but Owner shall not have the right to construct or maintain any structure for human habitation on any part of said land, and Owner shall obtain [VEPCO's] approval of the type and location of such piers, jetties, recreational or protective structures before they are constructed.

All references to Owner and [VEPCO] shall include their heirs, successors and assigns.

The Coopers trace their chain of title to the Johnsons. By deed dated November 10, 1971, the Johnsons conveyed to the Zugschwerts a 4.5315-acre tract, part of the land remaining after the 1968 conveyance to VEPCO. From this tract, the Zugschwerts conveyed approximately 2.0 acres to Ernest L. Tressler, Dreama D. Tressler, George L. Greco, and Elizabeth A. Greco on April 7, 1977. The Tresslers and the Grecos partitioned their 2.0-acre tract in 1978, with the Grecos receiving a 1.0-acre parcel. In 1988, the Grecos conveyed this 1.0-acre parcel to the Coopers.

In none of these conveyances except the 1988 deed from the Grecos to the Coopers is there any reference to the shore land. The Greco-to-Cooper deed contains this provision:

The [Grecos] do hereby release unto [the Coopers] all their claim upon that certain parcel of shore land located between the herein conveyed parcel and the fluctuating water line of Lake Anna. The claims herein released unto [the Coopers] include the exclusive right, except as provided in the conveyance of said shoreland to [VEPCO], to enter upon, occupy and use for recreation and agricultural purposes the herein described portion of shore land . . . .

The Kolbergs also trace their chain of title to the Johnsons. By deed dated March 4, 1972, the Johnsons conveyed to the Zugschwerts a second tract, this one containing 5.9326 acres, part of the land remaining after the 1968 conveyance to VEPCO and adjoining the 4.5315-acre parcel conveyed to the Coopers in 1971. On August 12, 1977, the Zugschwerts conveyed the 5.9326-acre tract to the Kolbergs and M.R.L., Incorporated. Then, in 1978, the Kolbergs and M.R.L. partitioned the tract, with the Kolbergs receiving Lot #2, containing 3.002 acres. An exhibit in the record shows that the Kolbergs divided Lot #2 into Lot 2A, containing 1.064 acres bordering the shore land and adjoining the Coopers' property, and Lot 2B, containing 1.941 acres, with no frontage on the shore land.

The shore land is not mentioned in the deed from the Johnsons to the Zugschwerts. However, the deed from the Zugschwerts to the Kolbergs and M.R.L. contains this provision:

The [Zugschwerts] specifically convey all rights, title and interest in the easement mentioned in the deed . . . between [the Johnsons and VEPCO] . . . . It is the intent of the [Zugschwerts] that the easement of the previously conveyed adjoining property be divided from the 734.6' iron pin found to the nearest point of water.

As the trial court noted, this clause was the genesis of the present dispute. Relying upon its provisions, the Kolbergs erected their wire cable fence from the 734.6' iron pin across the shore land to the nearest point of water, and they claim that the location of the fence is the proper division line between the portion of the shore land easement available for their use and the portion available for the Coopers' use.

In the process of holding that the Coopers had failed to establish an encroachment by the Kolbergs, the trial court found (1) that the shore land reservation in the 1968 Johnson-to-VEPCO deed constituted an easement appurtenant and not in gross, with the remaining lands of the Johnsons as the dominant tenement and the shore land as the servient tenement, (2) that when the Johnsons conveyed to the Zugschwerts 4.5315 acres of the remaining land in 1971 and 5.9326 acres in 1972, some portion of the abutting shore land went with each conveyance, but whatever portion was conveyed by the 1971 deed could not have been reconveyed by the 1972 deed because it already had been conveyed in 1971, and (3) that the Coopers did not have constructive notice of the 734.6' division line in the 1977 Zugschwert-to-Kolberg/M.R.L. deed because the deed was not in the Coopers' chain of title.

The trial court rejected the Coopers' contention that the division line of the easement in question should be established by extending the existing boundary lines of the Cooper and Kolberg parcels in straight lines across the shore land to the water line of Lake Anna. The court also rejected the Coopers' alternate contention that the easement should be considered as non-exclusive, that is, as one held in common for the use and benefit of all abutting owners.

The court ruled instead that "[t]he division of the 'shore land' should be determined by the application of the principle of apportion-

ment," as enunciated in RESTATEMENT OF PROPERTY § 488 (1944). The court cited the concluding sentence of Comment d, entitled "Distribution of easement appurtenant upon subdivision of dominant tenement," as follows:

> The successors to the possession of the divided parts will be entitled to benefits substantially proportional to the benefits the original possessor could realize from those parts while he held them all in a single possession.

Applying this principle to the present case, the trial court stated as follows:

> [T]he right to use the benefits of the shore land easement must be apportioned among the abutting subparts of the dominant tenement substantially proportional to the amount of land that each abutting subpart bears to the original dominant tenement. Stated differently, [the Coopers and the Kolbergs] have the right to use so much of the shore land that abuts their respective parcels as the proportionate share of each parcel bears to the original dominant tenement. For example, if the [Coopers'] parcel is 20% of the original dominant tenement, the [Coopers] would have the right to use 20% of the original servient tenement (the shore land), and the dividing line would be drawn to comport with that apportionment.

Concluding, the court stated that the Coopers had "failed to establish that the [Kolbergs'] wire cable encroaches upon their proportionate share of the shore land."

On appeal, the Coopers have abandoned their contention that the division line of the shore land easement should be established by the straight-line-extension-of-boundary-lines method. In this Court, the Coopers rely solely on their alternate contention that the trial court should have declared the shore land a common area, allowing use and enjoyment by all successors to the original grantors in the Johnson-to-VEPCO deed. That deed, the Coopers say, evidenced an intent to establish an easement for recreational and agricultural uses by the owners in common "without the ability of any individual owner to gain exclusivity of any portion thereof." Further, the Coopers opine, the subsequent "out" conveyances by the Johnsons did not restrict or limit the easement rights in any way and granted "a vested right of use of the shore land but not an exclusive ownership right therein."

Continuing, the Coopers maintain that a common easement to be shared by all the abutting owners can be established in this case by way of analogy to the condominium law of Virginia. The "land in dispute in this instance closely resembles a 'common area' as is found in a condominium association," the Coopers assert, and to declare the shore land "a common area provides for an equitable resolution of the conflict that is well supported by precedent of this Court." This resolution, the Coopers assert, is preferable to "the 'apportionment' solution devised by the trial court [because that solution] lacks firm footage in the case law," is impractical, and is virtually impossible to apply. Indeed, the Coopers conclude, perhaps their most convincing argument in favor of a common easement is that "there seems to be no more reasonable alternative for fairly determining the ownership of such an easement."

The trial court stated three grounds for its rejection of the Coopers' claim to a non-exclusive easement in favor of adoption of the apportionment method of dividing the shore land. First, "the character or nature of the easement precludes non-exclusive use of the whole by all of the owners of abutting land." Second, "the instruments in the parties' chains of title clearly indicate that a non-exclusive joint use of the shore land has never been contemplated." Finally, apportionment is the "appropriate solution to the problem posed in this case."

We agree with the trial court that the easement in question should not be considered non-exclusive. As the court noted, the nature of the easement precluded its being treated like a right-of-way, for example, where all owners of the subdivided portions of the dominant tenement would use the easement as a whole, rather than each owner of a subpart using a discrete portion. The easement here, the court said, provided more than mere access to the waters of Lake Anna; the deed creating the easement permits the shore land to be used for recreational and agricultural purposes and for the construction of piers, jetties, or other recreational or protective structures. Joint use under such circumstances, the court concluded, would "cause chaos."

Furthermore, as the trial court also noted, the instruments in the parties' chains of title clearly negate the idea of joint use of the shore land. The Johnson-to-VEPCO deed explicitly reserved to the Johnsons, their heirs, successors, and assigns the *exclusive* right to enter upon, occupy, and use the shore land for recreational and agricultural purposes. This language certainly did not contemplate that one owner of a subpart of the dominant tenement would have the right to enter upon, occupy, and use a pier, jetty, or other recreational or protective structure erected by the owner of another subpart. And the very

deed by which the Coopers acquired their property released to them "*that certain parcel* of shore land located between the . . . parcel [conveyed by the deed] and the fluctuating water line of Lake Anna," including "the *exclusive* right" to use the "*herein described portion*" of the shore land. (Emphasis added.) The language of this deed clearly indicates that the Coopers, as owners of a subpart of the dominant tenement, would have the use of a separate and discrete portion of the shore land.[1]

On the exclusivity issue, there remains the Coopers' argument that we should draw an analogy between the easement involved in this case and a common area in a condominium project. However, we think it would be inappropriate to analogize a shore land easement, whose nature must be determined by the express terms of a deed, to a common element in a condominium project, the character of which is determined by statutes that recognize a concept unknown to the common law and are applicable only to that concept. Indeed, as the Zugschwerts say on brief, "[a]pplying such a concept to the facts here would be unworkable and inconsistent with the vested rights of property owners at Lake Anna."

We also agree with the trial court that apportionment is the appropriate solution to the problem presented in this case. As noted previously, the Coopers asserted in the trial court that the problem should be solved by adopting the straight-line-extension-of-boundary-lines method or, in the alternative, by declaring the easement in question non-exclusive. The trial court rejected both these contentions.

The Kolbergs, on the other hand, asserted in the trial court that the problem should be solved by applying the rules applicable to the determination of littoral and riparian rights. The trial court rejected this contention, noting that "this is not a littoral or riparian rights case" because the dispute here "involves . . . an *on-shore easement,* not a question of rights in the land bed under the waters of Lake Anna."

---

[1] In support of their argument for the recognition of a common easement in this case, the Coopers cite our decisions in *Brown v. Haley,* 233 Va. 210, 355 S.E.2d 563 (1987), and *Stoney Creek Resort v. Newman,* 240 Va. 461, 397 S.E.2d 878 (1990). In each of these cases, however, we found the existence of an implied easement where the deed conveying a portion of the dominant tenement did not expressly provide for the easement rights sought by the subsequent purchaser. The present case involves an express easement created by a deed whose terms govern the rights of the parties, and it is impermissible to imply an easement at odds with those terms. *See Nedrich v. Jones,* 245 Va. 465, 477, 429 S.E.2d 201, 207 (1993) (law will not impose implied contractual relationship upon parties in contravention of express contract); *Ellis & Myers Lumber Co. v. Hubbard,* 123 Va. 481, 502, 96 S.E. 754, 760 (1918) (only in absence of express contract will law imply contract). For the same reason, there is no merit to the Coopers' additional argument that "injunctive relief is a proper and necessary remedy for the protection of an implied easement from the obtainment of fee ownership through prescription or adverse possession."

█ Having rejected all the contentions made by the parties, the trial court, on its own, determined that "[t]he appropriate solution to the problem posed in this case is found by returning to the principle of apportionment." The problem posed for the trial court was how to apportion an easement appurtenant upon subdivision of the dominant tenement. Not finding any resolution to the problem in Virginia precedent, the trial court turned to the RESTATEMENT OF PROPERTY (1944) and found the principle that "the benefit of an easement appurtenant accrues upon a subdivision of a dominant tenement to the benefit of each of the parts into which it is subdivided," *id.* § 488 cmt. b, and the rule that "[t]he successors to the possession of the divided parts will be entitled to benefits substantially proportional to the benefits the original possessor could realize from those parts while he held them all in a single possession," *id.* cmt. d.[2]

The Coopers do not question the propriety of the trial court's formulation, on its own, of a solution to the problem posed in this case. And about all the Coopers can find to say about the solution the trial court devised is that apportionment is an impractical method whose application to the present case would be "a virtual impossibility." While the Coopers cite examples illustrating how apportionment might prove impractical or impossible under varying circumstances, those circumstances do not exist in this case.

█ Further, as the Kolbergs point out, the Coopers have cited no authority to rebut the trial court's conclusion that apportionment is the proper theory for determining the rights of property owners in an exclusive easement situation. We have not discovered any such authority ourselves or any other reason to question that the apportionment method employed by the trial court is fair and just under the circumstances of this case.

Accordingly, we hold that the trial court did not err in finding that the Coopers had failed to establish an encroachment by the Kolbergs, and we will affirm the judgment of the trial court. This renders moot the Kolbergs' assignments of cross-error.

*Affirmed.*

---

[2] Compatible with the rule enunciated in comment b of § 488 of the Restatement, we said in *Cushman Corp. v. Barnes*, 204 Va. 245, 253, 129 S.E.2d 633, 640 (1963), that "[w]hen a portion of the dominant estate is conveyed away, without excepting the [easement], the owner of such portion has the right, in connection with the reasonable use of his land, to make use of the easement if his land is accessible thereto." However, we did not consider in *Cushman* the issue presented here, *viz.*, how to apportion an easement appurtenant upon subdivision of the dominant tenement.