Present: Carrico, C.J., Compton, Stephenson,[1] Lacy, Keenan, and
Koontz, JJ., and Poff, Senior Justice

ORCHARD GLEN EAST, INC.

OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.
v.  Record No. 961603                September 12, 1997

BOARD OF SUPERVISORS OF
PRINCE WILLIAM COUNTY

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
LeRoy F. Millette, Jr., Judge

In this appeal, we consider whether a condominium
development, in which no individual units were sold or offered
for sale by the developer, was properly assessed for real estate
taxes based on the value of the individual units as separate
parcels, rather than on the value of the development as a single
parcel actually used as an apartment complex.

The essential facts are not in dispute.  Orchard Glen East,
Inc. (Orchard Glen) planned, designed, and constructed the
development in question on its property in Prince William County
(the County).  Orchard Glen recorded the appropriate condominium
declaration, or condominium instruments, in the land records of
the County, subjecting the development to the provisions of the
Condominium Act, Code §§ 55-79.39 through -79.103.  Thereafter,
beginning in 1988, it constructed 243 individual condominium
units in a three-phase project.

As a result of an ongoing evaluation of the local housing
market during an early stage of the construction, Orchard Glen

---

[1]Justice Stephenson participated in the hearing and decision
of this case prior to the effective date of his retirement on
July 1, 1997.

decided to lease the individual units as apartments rather than to market them as condominium units.  Consequently, as each phase of construction was completed, the units in that phase were leased as apartments.  Orchard Glen has never sold or offered for sale as a condominium any of the individual units within its development even though, at all times relevant to the tax assessments at issue, it could have done so pursuant to the recorded declaration.

On December 28, 1994, Orchard Glen filed an application in the trial court, as authorized by Code § 58.1-3984, to correct alleged erroneous tax assessments by the County on the project for the years 1991, 1992, 1993, and 1994.  Orchard Glen asserted that overassessments ranging from 2.8 to 6.8 million dollars had been made for those years.  On May 4, 1995, Orchard Glen filed an application to reduce the assessment for 1995 by 5.7 million dollars.  In each instance, Orchard Glen asserted that the assessments were erroneous because, rather than being made on its property as a single apartment complex, the assessments were made on the individual units as separate parcels.  The trial court consolidated the two cases for trial.[2]

Ruling on pre-trial motions, the trial court granted partial

_____

[2]Prior to filing these applications, Orchard Glen had applied to the Prince William County Board of Equalization to have its property assessed for each of the years in question as a unitary apartment complex.  The Board rejected Orchard Glen's request but reduced the County's assessment of all or some of the individual units for each of the years in question.  The trial court ultimately vacated these reductions and adopted the fair market value assessments originally set by the County.  The action of the trial court vacating the reductions granted by the Board is not an issue in this appeal.

summary judgment for the County, finding that Code § 55-79.42 permitted a taxing authority "to assess a condominium project as individual condominium units even if no individual unit has been sold," and further finding that Code § 58.1-3202, requiring local taxing authorities to assess multi-unit real estate leased to residential tenants without regard to the property's potential value as a condominium, had no application to a property already subject to condominium instruments.

At the subsequent evidentiary hearing, the principal evidence presented by the parties consisted of expert testimony concerning the method of assessing the property to determine its fair market value for tax purposes. Orchard Glen's position was that the property should be assessed as an apartment complex and in comparison to other properties being similarly used because this was its highest and best use under market conditions. The County maintained that, so long as the condominium declaration remained in force, the highest and best use of the property was as a condominium and, thus, the individual units were to be assessed according to their value as separate parcels of real estate.[3]

The trial court entered judgment for the County, finding that the assessment of the property as a unitary apartment complex "would result in the property being assessed at its 'use

---

[3]At trial and on appeal the County has conceded that Orchard Glen merely had to terminate the condominium instruments in order for the project to be appraised as a unitary apartment complex. Code § 55-79.72:1(A). The parties agree that since the trial of this case this has been done, and the project is now assessed as a single parcel.

value' which, in this case, is different and less than the property's 'fair market value'" as individual condominium units, for which the trial court found that there was an active market in the County. The trial court further found that the parties had stipulated to the presumption of correctness in the County's assessment of the individual units and that Orchard Glen "failed to produce sufficient evidence that the County's original assessments . . . were the result of manifest error." We awarded Orchard Glen this appeal.

## DISCUSSION

We begin our analysis of the issues presented in this appeal with a focus on the primary assertion of Orchard Glen. The essence of that assertion is that during the tax years in question its project was an apartment complex and not a condominium and, thus, its project was erroneously taxed as a condominium.

Although Orchard Glen had recorded the appropriate condominium instruments, it asserts that because it leased rather than sold the individual condominium units it had not created "statutorily complete" condominium units in its project. In support of this assertion, Orchard Glen relies upon the statutory definition of condominium found in Code § 55-79.41 which provides that:

> "[c]ondominium" means real property . . . lawfully submitted to this chapter by the recordation of condominium instruments . . . . No project shall be deemed a condominium within the meaning of this chapter unless the undivided interests in the common elements are vested in the unit owners.

(Emphasis added).

Orchard Glen contends that the emphasized language in this statutory definition means that no condominium exists until at least one individual unit is sold. This is so, it reasons, because, under common law principles, it cannot be a tenant in common with itself in the common elements of the project. Thus, Orchard Glen concludes that, as the owner of all the individual units which it leased to individual tenants, it owned an apartment complex and not a condominium complex. We disagree.

As estates in land, condominiums are creatures of statute wholly unknown at common law, see Cooper v. Kolberg, 247 Va. 341, 348, 442 S.E.2d 639, 643 (1994), and the creation of a condominium is controlled by the Condominium Act. Code § 55-79.45 specifically addresses the creation of a condominium and provides that "[n]o condominium shall come into existence except by the recordation of condominium instruments pursuant to the provisions of this chapter." Code § 55-79.72:1(A) provides that "[i]f there is no unit owner other than the declarant, the declarant may unilaterally terminate the condominium." We have previously held that the rights and liabilities afforded to a condominium under the Condominium Act accrue at the time the master deed, now the condominium instruments, is recorded. See United Masonry, Inc. v. Jefferson Mews, Inc., 218 Va. 360, 377, 237 S.E.2d 171, 182 (1977). Accordingly, we hold that a condominium is created upon the recordation of the appropriate condominium instruments and is not dependent upon the subsequent sale of one of the individual condominium units within the

condominium project.  For these reasons, we reject Orchard Glen's assertion that its project was an apartment complex and not a condominium complex for purposes of the issues presented in this appeal.

For similar reasons, we reject Orchard Glen's contention that Code § 55-79.42 requires a taxing authority to treat a condominium in which no units have been transferred as a single parcel.  Orchard Glen relies on language in that statute which directs that the unit of "any unit owner other than the declarant . . . shall be separately assessed and taxed."  Id.  However, nothing in Code § 55-79.42 prohibits the taxing authority from treating as separate parcels of real estate any completed units still in the possession of the declarant.  To the contrary, the statute expressly states that once a unit is completed, it "constitutes for all purposes a separate parcel of real estate."  Id. (emphasis added.)

Read in its full context, Code § 55-79.42 permits the taxing authority to assess individually each completed unit in a condominium project without regard to ownership, and to include in that assessment a proportional share of the assessment of common areas of the project which are not subject to withdrawal or conversion by the declarant.  Common areas which remain subject to withdrawal or conversion by the declarant are to be assessed separately as the sole property of the declarant. Orchard Glen's project was fully developed, with no common areas subject to withdrawal or conversion.  Accordingly, each unit was subject to assessment as an individual parcel.

We also find no merit in Orchard Glen's assertion that Code § 58.1-3202 bars the County from assessing its property as a condominium rather than as a unitary apartment complex.

Code § 58.1-3202, in pertinent part, reads:

> . . . the fair market value of multi-unit real estate leased primarily to residential tenants shall be determined without regard to its potential for conversion to condominium or cooperative ownership. A sale of apartment property shall not be presumed to be for such conversion unless overt action which is a prerequisite to conversion by the buyer has been taken within three months from the recordation of the deed.

The express language of the statute demonstrates that it applies to property which has not been made the subject of recorded condominium instruments. Accordingly, the trial court correctly determined that this statute had no application to Orchard Glen's property because at all times relevant to the assessments that property was a condominium and no "conversion to condominium" was involved.

We next consider Orchard Glen's contention that the amount of the assessments of the property was disproportionate to that of other properties in the County which were assessed as unitary apartment complexes. Orchard Glen contends that since its property was also being used as a unitary apartment complex, the assessment of the property as a condominium complex violated the constitutionally mandated requirement of uniformity in tax assessments. See Va. Const. art. X, §§ 1 & 2. We disagree.

"The constitutional mandate requires uniformity in the assessment of 'properties having like characteristics and qualities, located in the same area.'" Lee Gardens Arlington

Limited Partnership v. Arlington County Board, 250 Va. 534, 538, 463 S.E.2d 646, 648 (1995)(quoting Smith v. City of Covington, 205 Va. 104, 108, 135 S.E.2d 220, 223 (1964)). Article X, § 1 expressly provides that "[a]ll taxes shall be levied and collected under general laws and shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." (Emphasis added.)

The class within which Orchard Glen's property fell during the assessments at issue was that of property subject to recorded condominium instruments in which the individual units were capable of being offered for immediate sale at the owner's option. The properties to which Orchard Glen would have the County compare its assessment for uniformity purposes were not subject to condominium instruments and, thus, were not capable of being sold as individual units. Accordingly, these properties were not of "like characteristics and qualities" to Orchard Glen's property, and they do not present an appropriate comparison for determining the uniformity of the County's assessment of the property in question.

Finally, we consider whether the trial court correctly determined that Orchard Glen failed to carry its burden of rebutting the presumption of correctness afforded to the County's assessment. As noted above, Orchard Glen does not dispute this standard, and at trial relied primarily on its assertions that its project was not a condominium complex or that, even if it was, market conditions dictated that its highest and best use was as an apartment complex. The County's position, supported by the

testimony of its expert witnesses, showed that a market existed for condominiums and that the fair market value of the project if marketed as a condominium complex exceeded the fair market value of the project used as an apartment complex.  The trial court considered this evidence and determined that Orchard Glen had not met its burden.  We agree.

Although there was a conflict in the expert evidence, that conflict alone was insufficient to overcome the presumption favoring the County.  "Courts should be reluctant, within reasonable bounds, to change assessors' judgments because courts are not duly constituted tax authorities."  Board of Supervisors of Fairfax County v. Telecommunications Industries, Inc., 246 Va. 472, 476, 436 S.E.2d 442, 444 (1993).  Here, there was sufficient evidence supporting the County's original assessment of the project's fair market value at its highest and best use as a condominium complex.  The evidence presented by Orchard Glen placed the issue, at best, in equipoise, and, thus, was insufficient to overcome the presumption in favor of the taxing authority's judgment.  See id. at 475, 436 S.E.2d at 444; Board of Supervisors of Fairfax County v. Donatelli & Klein, 228 Va. 620, 627, 325 S.E.2d 342, 345 (1985).

For these reasons, we will affirm the judgment of the circuit court.

Affirmed.