## CIRCUIT COURT OF THE CITY OF RICHMOND

Lexington Tower Assocs.

v.

Director of Finance
of the City of Richmond et al.

March 24, 1998

Case No. LB-3116-3

BY JUDGE T. J. MARKOW

This case is before the court on the Petition for Correction of Erroneous Assessments of taxes. The parties appeared by counsel for trial on March 6, 1998. The plaintiff is Lexington Towers Associates ("LTA"), a Virginia general partnership which owns the Lexington Towers apartment building ("the Property") in the City of Richmond. The defendants are the Director of Finance of the City of Richmond and the City of Richmond ("the City"). They are authorized to assess values of property and levy real estate taxes pursuant to Title 58.1, Chapter 32 of the Virginia Code.

Lexington Tower was built in 1964 and consists of 197 separate residential units. It is a seventeen-story building located on West Franklin Street in downtown Richmond. The apartments range in size from 365 to 1,108 square feet; the average size is 543 square feet. Approximately fifty of the units are 365 square feet efficiencies; approximately one hundred units are 481 square feet junior executives efficiencies; approximately forty units are one bedroom; and six units are two bedrooms. Amenities include a fitness center, special events room, card and billiard room, lounge with piano, rooftop sundeck with pool, and a full refreshment bar. Lexington Tower has been used as an apartment-for-rent building since opening.

After occupancy dipped below fifty percent, the plaintiff decided to market the property as a condominium and filed the appropriate declaration with the City on April 12, 1993. Despite hiring a marketing firm and conducting extensive advertising, none of the condominium units was ever sold. Only two non-binding reservation agreements were executed by prospective buyers. The marketing agreement was terminated on April 7, 1993, after approximately two and one-half months. As of January 1, 1995, the Property was no longer being marketed as a condominium. The Condominium Declaration was terminated on February 15, 1995. At all times, the plaintiff continued to lease the units to tenants.

With respect to tax year 1995, the Property was assessed by the City at an aggregate value of $7,464,294.10. For the previous tax years of 1992, 1993, and 1994, the property was assessed at $3,700,000.00. On appeal to the Board of Review of Real Estate Assessments for the City of Richmond, the assessment was increased to $7,592,000.00. These figures reflect the aggregate value of separate assessments for each of the apartment units, each of which was designated as a separate tax parcel by virtue of the 1993 Condominium Declaration. These individual assessments were ostensibly based on city-wide averages of condominium unit sales and the list prices for Lexington Tower units as specified by LTA. The City's 1995 assessment for real estate and special district taxes amounted to $111,982.00; the plaintiff has paid $57,584.00. In tax year 1996, following the rescission of the Condominium Declaration, the City reduced the assessment to $3,695,000.00.

This Petition for Correction of Erroneous Assessments was filed on December 27, 1996. The plaintiff alleges that due to the lack of a market for the proposed condominium units, the highest and best use of the subject property was at all times as an apartment building, and thus, the value of the plaintiff's property as a condominium was substantially less than as an apartment building. In particular, LTA argues that the 1995 assessment and subsequent increase was erroneous and excessive, in excess of the Property's fair market value, and/or assessed in a manner lacking the required uniformity in its application with respect to the same class of subjects within the City of Richmond. The plaintiff maintains that it did not willfully fail or refuse to furnish the defendants with any necessary information as required by law. The prayer for relief seeks a reduction of the assessment to $3,700,000.00 and exoneration from payment of real estate and special district taxes based on the erroneous assessments for the tax year 1995.

In ruling on the defendants' Motion for Summary Judgment, the court has held that the Property was correctly classified by the City as a condominium

effective January 1, 1995. Each of the 197 individual units should have been assessed and taxed separately as of that date, consistent with the Condominium Declaration filed April 12, 1993, and terminated February 15, 1995. As the fair market value of each individual condominium unit remains in dispute, trial on this issue occurred on March 6, 1998.

Article X, Section 1, of the Virginia Constitution provides that taxes shall be uniform upon the same class of subjects, i.e., "properties having like characteristics and qualities ... ." *Lee Gardens Arlington L.P. v. Arlington County Bd.*, 250 Va. 534, 538, 463 S.E.2d 646, 648 (1995). "All assessments of real estate and tangible personal property shall be at their fair market value to be ascertained as prescribed by law." Va. Const., Art. X, § 2. "[E]ach condominium unit constitutes for all purposes a separate parcel of real estate." Va. Code § 55-79.42. In other words, once a Condominium Declaration has been recorded, a condominium complex must be assessed as separate parcels of real estate rather than a single apartment block. "[A] condominium is created upon the recordation of the appropriate condominium instruments and is not dependent upon the subsequent sale of one of the individual condominium units within the condominium project." *Orchard Glen East, Inc. v. Board of Supvrs. of Prince William County*, 254 Va. 307, 311-12, 492 S.E.2d 150, 153 (1997). The rights and liabilities afforded to a condominium under the Condominium Act accrue at the time the condominium instruments are recorded. *Id.* (citing *United Masonry, Inc. v. Jefferson Mews, Inc.*, 218 Va. 360, 377, 237 S.E.2d 171, 181 (1977)).

In appeals of tax assessments to the Circuit Court, the taxpayer bears the burden of proving that the subject property is assessed at more than its fair market value or that the assessment lacks uniformity or is otherwise invalid or illegal. Va. Code § 58.1-3984(A). The Court's decision is governed by § 58.1-3987. If the taxpayer has sustained its burden of proof, the court may order correction of the assessment and exoneration from paying the overcharge. *Id.* § 58.1-3987. Further, the court has the discretion to reduce or increase an assessment to a determination of fair market value that is supported by the evidence. *Id.* "Fair market value is the price property will bring when offered for sale by a seller who desires but is not obligated to sell and bought by a buyer under no necessity of purchasing." *Board of Supervisors v. Donatelli & Klein*, 228 Va. 620, 628, 325 S.E.2d 342, 345 (1985). *See, generally, Board of Supv'rs v. Telecommunications Indus., Inc.*, 246 Va. 472, 436 S.E.2d 442 (1993) (the validity of an assessment may be rebutted by a showing of manifest error or total disregard of controlling evidence); *City of Richmond v. Chesterfield Apartment Co.*, 206 Va. 22, 141

S.E.2d 703 (1965) (party appealing a Board of Review decision has the burden of showing that the assessments, as determined by the Board of Review, are erroneous); *Arlington County Bd. v. Ginsberg*, 228 Va. 633, 325 S.E.2d 348 (1985) (trial court is not bound by the values argued by the parties or those fixed by witnesses and may weigh the evidence in order to establish an appropriate fair market value); *Smith v. Board of Supv'rs*, 234 Va. 250, 361 S.E.2d 351 (1987) (taxpayer met burden when its evidence of fair market value was uncontradicted and unrefuted by any competent evidence); and *County of Mecklenburg v. Carter*, 248 Va. 522, 449 S.E.2d 810 (1994) (no evidence presented that assessment was erroneous or lacking in uniformity; mere excess is insufficient to rebut presumption of validity).

The market data or comparative sales method of valuation is one of three generally accepted approaches for determining the value of property and was used by the expert witnesses called by each party. *See Chesterfield Apartment Co.*, 206 Va. at 25, 141 S.E.2d at 706. The plaintiff's appraiser, Mr. James L. Doherty, a long-time Richmond real estate broker and property appraiser, estimated that the total value of Lexington Towers as a collection of 197 condominium units was $5,560,000.00 at the time of the 1995 tax assessment. Mr. Doherty opined that several of the properties utilized in the City's assessment were "not comparable." For example, units at the Prestwould Condominium have nearly double the average square footage; it has a higher occupancy rate and longer average tenancy periods; and 50% of Prestwould tenants purchased their units upon condominium conversion. The condominiums at 5100 Monument Avenue are in a suburban location; the building has a close proximity to shopping; and its tenants consist mainly of elderly retirees. The Tuckahoe Condominium is located in a suburban area across from the Country Club of Virginia, a much higher income district than downtown Richmond. In contrast, Mr. Doherty compared the LTA units with the units on the corner of Hanover Avenue and Thompson Street and the Forest Oaks complex, a condominium in which many of the units are held by and sold to investors rather than to owner/occupants.

On cross-examination, the witness revealed that Forest Oaks is not a high-rise building (as is Lexington Tower); the unit price per square foot is nearly half of that proposed by Lexington Towers; there are no luxury amenities such as a pool and central air conditioning; and it is across from a park (rather than surrounded by urban features). Doherty selected Forest Oaks because the units were small, i.e., most were less than 500 square feet, and like those in Lexington, were in an urban setting and most likely to be purchased by investors rather than owner/occupants.

The defendants' appraiser witness, Mr. Richard C. Woodson of the City's tax assessment office, opined that the assessed value for Lexington Towers in tax year 1995 was valid. Nonetheless, Mr. Woodson admitted on cross-examination that he had no first-hand knowledge of the information that was used to arrive at the 1995 assessment or how the assessment was made. He described the general methodology of the comparable sales approach and the manner in which amenities, architecture, construction, and occupancy rates are used to arrive at an assessment. Further, Mr. Woodson confirmed that there are no condominium units currently existing in the central business district (the location of Lexington Tower). His analysis referred to numerous properties in the Fan District or near West End. These projects are generally low-rise and consist of fewer units than Lexington Tower, and few, if any, are as diminutive in size as the great majority of those in Lexington Tower.

The City also called Mr. H. Glenn James, a commercial real estate appraiser who practices in Norfolk. Mr. James evaluated and inspected twelve properties, including the Prestwould, 5100 Monument Avenue, and the Tuckahoe, but not Forest Oaks. None of these properties have units of less than 500 square feet (in contrast to the majority of Lexington Tower units). None of the compared locations are in the central business district of Richmond (as is Lexington Tower). Mr. James assessed the subject property at $7,857,000.00. While the Prestwould is within five blocks of Lexington Tower, it is a "luxury" building and consists of mostly large apartments up to 2,300 square feet. It has little in common with Lexington Tower.

His method of appraisal was to obtain sales data on several condominium projects located throughout the City and one in suburban Henrico. Mr. James learned the size of the units and calculated an average square foot sales price which was then compared to the average price per square foot of the Lexington Tower units. None of the "comparable" properties actually compared to Lexington Tower in either location or size of units. His analysis is not highly-regarded by this court. Even though it understands the importance of location in property valuation, the City's experts arrive at valuation based on average sales of non-comparable properties from dissimilar locations and buildings.

The court has arrived at the difficult realization that *no* properties in the City of Richmond have characteristics and qualities that are truly comparable to Lexington Tower. The fair market valuations offered by the parties here each depend upon properties which are distinct in many ways from the plaintiff's building. The class of property occupied by Lexington Tower is an urban, high-rise residential building offering primarily efficiency and one-

bedroom accommodations. The bulk of the units offered by the dueling experts here are low-rise, feature larger floor plans, but offer fewer amenities, several occupy suburban settings (except for Forest Oaks), and draw from different occupant pools. The only common element is property subject to recorded condominium instruments in which the individual units were capable of being offered for sale. Looking beyond these generalities, the court finds that the defendants' assessment lacks credibility and uniformity by virtue of the Property's unique location and other characteristics. The City has compared apples and oranges. Any valuation performed by the City which depends on substantially dissimilar properties is invalid and erroneous on its face. The taxpayer has proved more than a mere "excess" in the fair market value. In contrast to *Orchard Glen*, this case presents more than just a conflict in the expert evidence. *See Orchard Glen*, 254 Va. at 314, 492 S.E.2d at 154. The City has not provided adequate evidence to support the original assessment, the Board's assessment, nor adequate independent evidence of value. While that is not the City's burden, the court finds the plaintiff's evidence adequate to overcome the presumption of correctness accorded to the prior determinations.

The court is mindful of its discretion to restore the pre-condominium assessment of $3.7 million. The evidence does not support that assessment here. This would also fly in the face of the court's earlier ruling on Summary Judgment that the project should be valued as 197 individual units rather than as an apartment building. Rather, the valuation of $5.56 million offered by Mr. James L. Doherty is most convincing to the court, and it is hereby established as the fair market value of Lexington Tower condominium for tax year 1995. The plaintiff is hereby ordered to pay the proper amount of additional taxes to the defendants as reflected by this revised amount.